UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KEVIN SULLIVAN, VINCENT DUDLEY,
MARK MEHRINGER, JASON SLEEPER,
And MICHAEL TROMBLEY,
    Plaintiffs

v.

    Civil Action No:
    05-30004-MAP

CITY OF SPRINGFIELD, MASSACHUSETTS,
    Defendants

DEFENDANT'S MEMORANDUM OF LAW WITH REGARD TO
OPPOSITION AND CROSS-MOTION FOR
SUMMARY JUDGMENT

I.    INTRODUCTION.

    In this case White police officers have sued their employer under § 1983, alleging that the City's assignment of seniority in 1997 violated the Equal Protection Clause of the fourteenth amendment to the U.S. constitution.[1] Defendant opposes the motion and has cross-motioned for summary judgment on that count of the complaint.

    Plaintiffs allege that the Springfield Police Department violated the Equal Protection Clause as a result of assigning seniority of officers hired on the same day, by reconstituting a civil service list of the officers based on whether the officers were "majority or minority" race. As a result of the reconstituting of the list at the time of hiring, subsequent layoffs, which later occurred over six years later in 2003, as well as the later recall of the plaintiff police officers, occurred in a one-for-one manner (majority vs. minority) based on the assignment at the time of hiring.

    Plaintiffs allege they were subjected to layoff, or subjected to a greater duration layoff, than would have been the case if the hiring had not been instituted on a one-for-

50223

one basis. As such, while plaintiffs now complain of the order of "layoff and recall", the acts they contend violated Equal Protection occurred in 1996-1998 when the lists were reconstituted upon graduation from the police academy. Defendant asserts such claims are barred by the applicable statute of limitations.

Moreover, the reconstitution of the list was not the result of any decision by a policy maker of the City of Springfield, but rather, the result of non-policy making officers acting pursuant to instructions or advice received from the Human Resources Division of the Civil Service Commission for the Commonwealth of Massachusetts or what they believed was departmental practice. The City cannot be held liable for the acts of non-policy makers.

Moreover, even if a such acts were attributable to the City, they do not amount to a violation of § 1983 as there is insufficient undisputed evidence to show that any of the individuals named here suffered sufficient cognizable injury or damages as a result of the reconstituted list being used for purposes of layoff or recall, to support summary judgment on the Equal Protection claim.

II.    STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment has been revisited by the First Circuit Court of Appeals on several occasions. _Serapion v. Martinez_, 119 F.3d 982, 986 (1st Cir.1997),(citing _McCarthy v. Northwest Airlines, Inc._, 56 F.3d 313, 315 (1st Cir.1995))(collecting cases); _Coyne v. Taber Partners I_, 53 F.3d 454, 457 (1st Cir.1995)(same). A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1] The complaint alleges several counts. Plaintiff has filed for partial summary judgment on the § 1983 count.

50223

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial worthy issue as to any material fact. Perez v. Volvo Car Corporation, 247 F.3d 303, 310 (1st Cir.2001); Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir.2000); Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir.1997). A fact is "material" if it potentially could affect the suit's outcome. Id. An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. Id. At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." See Cadle Company v. Hayes, 116 F.3d 957, 959-60 (1st Cir.1997). The summary judgment machinery operates in two phases. First, the movant must make a preliminary showing that there is no genuine issue of material fact which requires resolution in the crucible of trial. Once this showing has been made, the burden shifts to the nonmovant to demonstrate, through specific facts that a trial-worthy issue remains. Id. In applying the standard, the court must construe the record and all reasonable inferences from it in favor of the nonmovant (the party opposing the summary judgment motion). Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir.2000);

50223

*Cortes-Irizarry*, 111 F.3d at 187; see also *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). An absence of evidence on a critical issue weighs against the party-- be it the movant or the nonmovant--who would bear the burden of proof on that issue at trial. Perez, 247 F.3d at 310; see also Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir.1998); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). Defendants must not only show that there is "no genuine issue of fact," but also that they are "entitled to judgment as a matter of law." Vega-Rodriguez v. Puerto Rico Telephone Co., 110 F.3d 174, 178 (1st Cir.1997). Fed.R.Civ.P. 56 does not ask which party's evidence is more plentiful, or better credentialed, or stronger weighted, because at the summary judgment stage, the Court may not weigh the evidence. *Cortes-Irizarry,* 111 F.3d at 187; *see also Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Further issues of motive and intent as to the conduct of any party normally foreclose summary judgment. *Mulero-Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir.1996)(reversing summary judgment and noting that "determinations of motive and intent ... are questions better suited for the jury")(internal quotation marks and citation omitted); *see also Tew v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1551, 1555 (S.D.Fla.1990)("Certain issues such as fraud, intent and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun'

"). In sum, the Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." _Reeves v. Sanderson Plumbing Products, Inc._, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (emphasis added). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id. "The Court should give credence to the evidence favoring the nonmovant as well as the evidence supporting the moving party that is contradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." Id. Nonetheless, "[i]f the adverse party does not [file an opposition], summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. 56(e) (emphasis added). The First Circuit Court of Appeals has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against that party; therefore, a District Court is nonetheless "obliged to consider the motion on merits, in light of the record as constituted, in order to determine whether judgment would legally be appropriate." Kelly v. United States, 924 F.2d 355, 358 (1st Cir.1991); see also Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir.1991)(before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law). The consequence of failing to oppose a motion for summary judgment "is that the party may lose the right to file an opposition." Mullen v. St. Paul Fire & Marine Ins. Co., 972 F.2d 446, 451-52 (1st Cir.1991) (discussing unopposed motion for summary judgment). And a party that fails to oppose a motion for summary judgment, does so at its own risk

50223

and peril. See e.g. Hebert v. Wicklund, 744 F.2d 218, 223 (1st Cir.1984)(plaintiffs that

failed to file proper oppositions to the request for fees "proceeded at their own risk")'

Corrada Betances v. Sea-Land Service, Inc., 248 F.3d 40, 43 (1st Cir.2001)("A party

who opposes a properly substantiated motion for summary judgment but fails to muster

counter-affidavits or other evidentiary materials does so at his peril").

## IV.    ARGUMENT

1.    Plaintiffs claim for an Equal Protection violation under §1983 is time barred,
entitling Defendant to allowance of its cross motion for summary judgment or, in the
alternative, denial of plaintiffs' motion.

Any causes of action which the plaintiffs might have had based on the events of

assigning their seniority are barred by the applicable statute of limitations because they

did not commence this current action within three years from the date of establishing

their seniority or their receipt of a department roster listing their seniority by number.

Although federal law does not provide a limitation period for §1983 claims, courts

apply the forum state's statute of limitations provision for personal injury torts. See

Wilson v. Garcia, 471 U.S. 261, 276-80, 105 S.Ct. 1938, 1947-49 (1985); Calero-Colon

v. Betancourt-Lebron, 68 F.3d 1, 2-3 (1st Cir.1995). Massachusetts law prescribes a

three-year limitations period for causes of action such as plaintiffs' Section 1983 claims.

See Street v. Vose, 936 F.2d 38, 39-40 (1st Cir.1991), cert. denied, 502 U.S. 1063, 112

S.Ct. 948(1992). While federal courts borrow the forum state's statute of limitations,

federal law provides the applicable rule for when the limitation period begins to run, or

accrue, on §1983 causes of action. See Calero-Colon, 68 F.3d at 3.

Section 1983 claims accrue when the plaintiff knows or has reason to know of

the injury on which the claim is based. Id. In determining when the plaintiff knew, or

50223

should have known, courts look to the common law cause of action most closely analogous to the constitutional right at stake. *Id.*

Plaintiffs in this case were clearly aware, or should have been aware, of their seniority status through the periodic distribution of rosters by the police department over the course of the time between their hiring and layoff. Although each of the plaintiffs was hired on the same day, along with other graduates of their academy, their actual seniority standing is set forth on a roster handed out to the public on a periodic basis. (Copies of these rosters are attached to the Plaintiffs' submission in support of their summary judgment motion as Exhibits G, J and K ). As set forth in the Affidavit of Peter Murphy:

> On several occasions between 1995 and 2003 (typically on an annual basis) the City distributed rosters to all patrolmen. These rosters noticed the patrolmen as to their seniority in comparison to all other employees in the Union. To the best of my knowledge, at no time between 1995 to 2003 did any employee, nor any union representative, file a grievance disputing the method in which the City computed seniority. (Murphy Aff. ¶ 6)

The Commonwealth of Massachusetts Department of Personnel Administration

Rule PAR 15(4), 1 Mass. Civil Service Rep. 2033 (1988), states that:

> When one or more persons among a larger group of civil service employees holding permanent positions in the same title and departmental unit are to be separated from their positions . . . and the entire group has the same civil service seniority date, the appointing authority has the discretion to select for separation among those with equal retention rights, applying basic merit principles.

Such rules regulate the civil service system, G.L. c. 31, § 3, and have the force of law, *Kenney v. McDonough,* 315 Mass. 689, 693, 53 N.E.2d 1006 (1944). Plaintiffs are presumed to know them, both as a citizen, *Bray v. Bray,* 359 Mass. 439, 442, 269

50223

N.E.2d 452 (1971), and as a public employee, _Ransom v. City of Boston,_ 192 Mass. 299, 307, 78 N.E. 481 (1906). Indeed, the rules of the civil service system are deemed to "constitute[ ] a part of the terms of [every public employee's] employment," including police officers such as the plaintiffs . _Id._ at 307, 78 N.E. 481.

As such, to the extent they were being deprived of Equal Protection based on assignment of seniority, it was incumbent upon the plaintiffs to assert their rights in a timely manner.

Statutes of limitations, in their operation, cut off both meritorious and unmeritorious claims. It is well understood that the purpose of such limitations is to bring repose and security to persons who might otherwise be faced for long periods with the possibility of meeting claims under more difficult conditions. Under the circumstances here, it would be unfair to hold the City liable for a violation of Equal Protection based on the assignment of seniority made many years after the fact, when the issue could have and should have been brought to the attention of the Board of Police Commissioners sitting at the time within the three year period.

The Affidavit of Peter Murphy indicates that changes in the make up of the Board of Police Commissioners from the time of the alleged wrongdoing and the time of the lawsuit can make it impossible for new Board of Police Commission appointees to figure out what may or may not have happened almost ten years prior to their tenure:

> The Board was comprised of five civilians who served through mayoral appointment, which changed with mayoral administrations. There was a change in mayors in 1996 leading to changes in the Board at that time. There was also a change in mayors in 2004 leading to changes in the Board. In between 1996 and 2002, although the mayoral administration was the same, there were changes in the Board members.

50223

(Murphy Aff. ¶ 5)

When the issue was brought to the attention of the Board in 2004, many years later, and under different mayoral administrations, the Board tried to deal with it in a rational logical fashion of sorting out the facts in an expedited arbitration process:

> To the best of my knowledge, the Board of Police Commissioners did not authorize Captain Cochrane's realignment of the lists "one for one" (minority and majority) when it occurred in 1997. To the best of my knowledge there is no evidence that the issue was ever brought to the attention of the Board of Police Commissioners until 2003. (Copy of letter Ex.6)

> After the issue came to the attention of the Board of Police Commissioners, in 2004, through a Union filed grievance over the "one for one" realignment in February 2004, the Police Commission authorized me to participate in an expedited arbitration in order to help sort out the facts. (Murphy Aff. ¶ ¶ 13,14)

As demonstrated above, the Board of Police Commissioners in office at the time the issue was brought up was not the same group of Commissioners at the time of the layoff, and neither utilized race in violation of the Fourteenth Amendment, nor violated the consent decree commonly referred to as *Castro v. Beecher* as alleged by plaintiffs.

To the extent that plaintiffs' claims are deemed to have merit, they should have raised them within three years of their first receiving notice of their seniority status. Such claims should now be barred as the case was not filed until January 11, 2005, some nine years after the assignment of seniority which they allege violated their rights.

Because there are no material facts in dispute regarding the issues as to the statute of limitations of the § 1983 count, defendant is entitled to allowance of its cross motion for summary judgment as a matter of law on that count. In the alternative, even if the City is not entitled to summary judgment on that issue, viewing the facts concerning

50223

the issue of summary judgment in a light most favorable to the defendant as the non-

moving party, plaintiff's motion for summary judgment must be denied in order to

determine facts concerning the time of accrual of a claim for violation of Equal

Protection.

2.      Plaintiffs cannot demonstrate that any unconstitutional acts in violation of Equal
Protection are attributable to the City for the purposes of imposing municipal liability
under § 1983 entitling Defendant to allowance of its cross motion for summary judgment
or, in the alternative, denial of plaintiffs' motion.

        In St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 926 (1988), the

Court stated:

> "When an official's discretionary decisions are constrained by
> policies not of that official's making, those policies, rather than the
> subordinate's departures from them, are the act of the
> municipality.... If the authorized policymakers approve a
> subordinate's decision and the basis for it, their ratification would be
> chargeable to the municipality...."
> Id.

In the present case, plaintiffs allege that Captain William Cochrane carried out

the realignment of the civil service list. While this court could infer Cochrane's position

comes with trappings of authority and discretion as to matters of a managerial nature,

there is no basis for the conclusion that a Captain in the Springfield Police Department

(or any other supervisor of personnel ) possesses final policy making authority with

regard to the complained-of actions. Under the City Ordinances, as set forth and

described in the Affidavit of Peter Murphy, all members of the Police Department were

bound by policies enunciated by the Board of Police Commissioners. In particular the

terms of the collective bargaining agreement as to seniority, would set forth the official

policy of the City and as such, this policy, and not Captain Cochrane or anyone else's

departure from such a policy, serve as the benchmark for determining municipal liability.

50223

There is no evidence of official policy of the City to which an Equal Protection violation can be attributed. Imposing liability on the municipality for what may be viewed as an abuse of discretion would, without more, be virtually indistinguishable from *respondeat superior*, a basis of § 1983 liability that the Supreme Court of the United States has rejected. See <u>Smith v. City of Boston</u>, 413 Mass. 607, 602 N.E.2d 198 (1992).

Additionally, Captain Cochrane did not possess final policy making authority as a matter of delegation, or through custom and usage. Governmental custom does not go to the propriety of a delegation of decision making authority, but rather to the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 127, 108 S.Ct. 915, 926(1988), quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1614(1970).

To carry the day on the "custom" argument, the plaintiffs must establish a pattern of occurrences or a practice similar to that experienced by them, but not necessarily induced by Captain Cochrane, so as to rise to the level of custom thereby having the force and effect of law. The only evidence of a prior use of "one for one" realignment based on majority and minority status is the recall of officers after a layoff in 1989. This instance of a "one for one" realignment would not be sufficient to prove a violation "so permanent and well settled as to constitute a 'custom or usage' with the force of law" under applicable decisions. The arbitration decision between the Union and the City, (Exhibit D in Plaintiffs' submission) while not involving the identical parties as this case,

50223

refers to the lack of evidence which is pertinent here: "[t]here is no evidence before me which would indicate that both of these parties [Union and City] fully understood for nine years that Section 7.02 was not being followed." (Ex. D at p. 17) Such evidence is indicative of the failure of the evidence to prove a "custom or usage".

Moreover, even assuming such evidence was sufficient to reach a jury as to a cognizable constitutional deprivation under § 1983, evidence can only yield liability against a municipality where that city's act or omission reflects "deliberate indifference to the constitutional rights of its inhabitants". *Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197(1989). Even assuming that the decision of to recall employees previously subject to layoff is sufficient to establish a "custom or practice", there is not evidence that it was made with "deliberate indifference to the constitutional rights of the inhabitants" of Springfield. The only indication of the basis of the decision in 1989 to recall "one for one" appears to be complaints from the Massachusetts Commission Against Discrimination seeking to achieve racial diversity goals to match the City's population. (See Murphy Aff. ¶ ¶ 9, 10 and Ex. 4 attached thereto). As to Captain Cochrane intentions on realignment of the list, in his deposition, he indicated he had read the *Castro-Beecher* consent decree; consulted with Lt. Finn who had been in the Chief's office when the 1989 layoff occurred; and sought advice from the Human Resources Division of the Civil Service Commission for the Commonwealth of Massachusetts by "conversing with Marie Greig at the Human Resources Divivion many, many times to try and clarify how we were to proceed". (Ex. A to Plaintiff's submission, Cochrane Depo pp. 28-29) Such attempts to act properly show a state of mind of racial sensitivity and concern to act properly to protect the rights of others rather than "deliberate

indifference" and would therefore be insufficient to rise to the level of a deprivation of rights under § 1983.

Based on the evidence, the City is entitled to summary judgment, or in the alternative, the plaintiffs' motion, with the facts viewed in a light most favorable to defendant, must be denied.

3.     Plaintiffs have failed to show that a layoff based on a "one for one" minority and majority basis violates Equal Protection, requiring allowance of defendants cross motion for summary judgment, or in the alternative, denial of plaintiffs' summary judgment motion.

In *Boston Chapter, NAACP v. Beecher*, 679 F.2d 965 (1st Cir. 1982), The United States District Court for the Eastern District of Massachusetts, Andrew A. Caffrey, Chief Judge, 522 F.Supp. 873, granted a preliminary injunction motion prohibiting a reduction in the percentage of minorities in both departments, and the First Circuit Court of Appeals, 679 F.2d 965, affirmed the granting of an injunction enjoining the City of Boston from laying off personnel pursuant to the statutory policy to the extent that such layoffs would reduce the percentage of minority police officers and firefighters below the level obtained before the layoffs began. In so holding, the First Circuit ruled that the district court had the equitable power to modify the *Castro-Beecher* consent decrees, and that the Massachusetts statutory "last hired, first fired" seniority system was not insulated from the court's orders, and that the orders were not unconstitutional.

On certiorari, however, the United States Supreme Court, 461 U.S. 477, 103 S.Ct. 2076, 76 L.Ed.2d 330, vacated Court of Appeals' judgment and remanded for consideration of mootness. On remand, the Court of Appeals, 716 F.2d 931, vacated and remanded. Supreme Court review was again sought, 104 S.Ct. 3576, and the case was remanded again, asking Court of Appeals to reexamine its "mootness" holding.

50223

The present case attempts to resurrect the issue mooted in that case, but only seeks retroactive monetary relief. When the 1989 recalls occurred "one for one" the issue of whether such a recall was proper may also have been presented, but was never the subject of any court action. When the 2003 layoffs occurred in Springfield, had the plaintiffs here sought to challenge their layoff, the issue "mooted" by the passage of legislation preventing the Boston layoffs may have presented itself for review in a preliminary injunction request. Now, Plaintiff's are presenting their claim, relying on the decision in Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984). However, the Stotts decision is distinguishable from the facts here.

The contention that Stotts controls this case must be based on inferences drawn from open-ended language in the Stotts opinion, as the facts and issues in Stotts are plainly distinguishable. Unlike the situation in Stotts, we are not concerned here with a district court's power over objection of one of the parties to the decree, to order retroactive relief that the consent decree never provided. Rather, the present plaintiffs challenge seniority assignments in violation of a collective bargaining agreement for officers who were laid off, reinstated, and have already had their seniority adjusted due to an arbitrator's award.

Additionally, the affirmative action ordered by the district court in Stotts was in direct conflict with a bona fide seniority system protected by section 703(h) of Title VII. Our case does not involve any conflict as there is no claimed conflict between the seniority plan and the remedies provided for in the Casto-Beecher decree.

A further distinction is that the parties to the Stotts decree had expressly

50223

disclaimed that the violations alleged in the complaint existed, whereas in this case the plaintiffs are not claiming that discriminatory patterns and practices that were found to exist as the basis of *Castro-Beecher* decree, that were held sufficient to support a Title VII action, have been remedied and the decree should be vacated.

Similar distinctions have been regarded as crucial by other circuits. *See EEOC v. Local 638*, 753 F.2d 1172, 1186 (2d Cir.1985) (distinguishing *Stotts* because here there was no direct conflict with a bona fide seniority plan; the *Stotts* Court's decision involved the retroactive award of competitive seniority, not prospective relief; and unlike *Stotts,* there was a finding that plaintiffs intentionally discriminated against non-whites). *Vanguards of Cleveland v. City of Cleveland*, 753 F.2d 479, 486 (6th Cir.1985) (distinguishing *Stotts* on the facts and rejecting plaintiffs' argument that *Stotts* controls where voluntary affirmative action plan did not directly deal with seniority). *Diaz v. American Telephone & Telegraph*, 752 F.2d 1356, 1360 n. 5 (9th Cir.1985) (limiting *Stotts* to its facts). *Van Aken v. Young*, 750 F.2d 43, 45 (6th Cir.1984) (distinguishing *Stotts* because the instant case involved an affirmative action plan voluntarily applied by city at point of hiring and unrelated to seniority rights). *Kromnick v. School District of Philadelphia*, 739 F.2d 894, 911 (3d Cir.1984) (distinguishing *Stotts*) *cert. denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985). *Grann v. City of Madison,* 738 F.2d 786, 795 n. 5 (7th Cir.) (distinguishing *Stotts* by stating that here, discrimination is acknowledged, the city defendant agreed to the relief provided, and case involved promotions and pay, not seniority rights), *cert. denied,* 469 U.S. 918, 105 S.Ct. 296, 83 L.Ed.2d 231 (1984). *See also Hammon v. Barry,* 606 F.Supp. 1082, 1095 (D.D.C.1985) (rejecting suggestion that *Stotts* precludes use of any race-conscious affirmative action

50223

plan and distinguishing *Stotts* on ground that this is a voluntary plan that does not directly affect vested seniority rights). *Turner v. Orr,* 759 F.2d 817, 823-826 (11th Cir., 1985) (distinguishing *Stotts* because this case did not involve infringement of a bona fide seniority system; no third party rights are involved here as no non-minority worker had to step down to accommodate a minority; and this case involves a consent judgment entered into by the parties). *NAACP v. Detroit Police Officers Association,* 591 F.Supp. 1194, 1202-03 (E.D.Mich.1984) (distinguishing *Stotts* on ground that it dealt with court-imposed affirmative action plan that did not by its terms deal with layoff question whereas the plan at bar was voluntary and explicitly adjusted seniority rights).

Plaintiffs argue that the Court's language in *Stotts* outlaws the use of any race-conscious affirmative action plan. However, "[I]t is not easy to determine from the plurality opinion in *Stotts* just how far a majority of the Court would want to go in the present situation." *Deveraux v. Geary,* 765 F.2d 268, (1st Cir 1985). The *Stotts* Court expressly declined to consider whether Title VII would prohibit the City of Memphis from voluntarily achieving the same results as the district court's order by adopting an affirmative action plan. *Stotts,* 467 U.S. at ----, 104 S.Ct. at 2590.

Quinn v. City of Boston, 325 F,3d 18 (1st Cir. 2003) and other cases relied on by the plaintiffs are distinguishable, involving facts where the question of whether the consent decree should be vacated or modified were at issue.

Considering the fact that plaintiffs here argue that *Castro-Beecher* was not followed, and that the decree does not govern seniority, there is a lack of any precedent on point to support their claims, and the issues were properly relegated to interpretation of the terms of a collective bargaining agreement and should not  be considered a

50223

violation of Equal Protection.

4.    Plaintiffs have failed to show that assignment of seniority based on a "one for
one" caused any "injury in fact to a cognizable interest" to support a violation of Equal
Protection, requiring a denial of summary judgment.

The basic requirements for Article III standing are that the petitioner is someone

who has suffered or is threatened by injury in fact to a cognizable interest, that the injury

is causally connected to the defendant's action, and that it can be abated by a remedy

the court is competent to give. *New England Regional Council of Carpenters v. Kinton*,

284 F.3d 9, 20 (1st Cir.2002).

In *Texas v. Lesage*, 528 U.S. 18, 120 S.Ct. 467 (1999), the Supreme Court held

that "where a plaintiff challenges a discrete governmental decision as being based on

an impermissible criterion and it is undisputed that the government would have made

the same decision regardless, there is no cognizable injury warranting relief under §

1983." *Id*. at 21, 120 S.Ct. 467.

Here, Plaintiffs challenge the decisions assigning them seniority at the time they

were hired, claiming that the decision, if it followed the terms of the collective bargaining

agreement, would have either resulted in them not being subject to layoff, or being

subject to recall from layoff sooner than they ultimately were rehired.

At the arbitration hearing, evidence of the impact of implementing the § 7.02 of

the collective bargaining Agreement was offered and presented a mixed indication of

the impact of the readjustment. Specifically a document showing the Police Academy

Classes of 1996, 1997 and 1998, which were affected by the layoff, (Exhibit 10 offered

by the Union and attached to the Affidavit of Peter Murphy in the City's Brief in this case

as Ex. 7) shows that under an implementation of § 7.02 of the collective bargaining

50223

Agreement, without the "one for one" readjustment the Arbitrator found:

> for the class of 1996 . . . 18 majority officers and 2 minority officers would have "higher seniority" while 15 minority officers and 2 majority officers would have lower seniority. It shows for the class of 1997 that 17 majority officers and 0 minority officers would have higher seniority, while 0 majority and 10 minority officers would have lower seniority. By contrast, for the class of 1998, the class which absorbed most of the layoffs, it shows that 12 minority officers and 1 majority officer would have higher seniority, while 18 majority officers and 1 minority officer would have lower seniority.
> (Ex. D to Plaintiff's Brief on p.9)

The Arbitrator's decision (Ex. D P's Br.) recites some testimony of Police Union

President Scanlon:

> Q:    On the impact which has been the subject of a number of questions, in relation to how it affects people by race in each of these classes, if the language was followed and the revised Seniority list was implemented how would that affect the people who are still laid-off awaiting recall in terms of who would benefit?
>
> A:    It would predominantly benefit Black and Hispanic Officers, They would come back at a quicker rate than they would unless it was changed. Black and Hispanic officers would come back sooner if we followed the Contract provision.
> Arbitrator's Decision (Ex. D to Pl's Br.) p. 9

The Arbitrator commented on the consequences of his decision on majority and

minority officers. (Ex. D. attached to Plaintiff's Brief, p. 18). He stated :

> I acknowledge full well that the reassignment of badge numbers will predominantly advantage majority members of the Academy classes of 1996 and 1997 in the future with respect to shift and vacation assignments. On the other hand, I note that the same reassignment of badge numbers will predominantly advantage minority Officers on layoff as their likelihood of being recalled to work since the goal of Castro v. Beecher was the employment of minority officers as opposed to their vacation or shift selection priority, I am satisfied that this decision does not do trauma to that goal.

In light of the evidence at arbitration, whether or not these individual plaintiffs

have suffered any "cognizable" injury sufficient to meet the requirement of *Texas v. LeSage*, is not clear. Although the issue of damages has been bifurcated as the plaintiffs seek summary judgment on liability only, a more detailed review of each of the plaintiff's alleged injury is required for purposes of determining whether any underlying Equal Protection violation is shown.

According to the deposition of Sgt. Peter Albano, (Ex B. Albano Depo. p.17) a total of 72 officers were laid off in 2003. Starting with the bottom of the roster list, and moving up the list, the last person laid off was plaintiff Thomas Meringer. Four persons above Mehringer were "saved", Perez, Kane, Bell, and Hrycay listed as 403, 404, 405 and 406 on Exhibit G. The order on the roster corresponds to the order that the names appear on the civil service list Form 14 (Exhibit E) which Captain Cochrane testified at his deposition contained the "readjusted" list on the "one for one" basis. (Cochrane Depo pp.27-28). The list received from Civil Service for purposes of interviewing, prior to hiring or the "readjustment" is contained in Exhibit C.

Exhibit I lists officers with a date that they left. It shows Vincent Dudley was laid-off as of 3/27/03 and reinstated 2/29/04, Jason Sleeper was laid-off on 3/18/03 and reinstated 9/14/03, Michael Trombley was laid-off 3/14/03 and reinstated 9/14/03, as was Kevin Sullivan. Thomas Mehringer is listed as laid-off as of 3/13/03 and reinstated 7/29/03.

Exhibit J to Plaintiff's motion contains a "Revised List After Winning Arbitration" where the plaintiffs in this and Exhibit K to plaintiff's motion is titled "SPD Police Roster before Arbitrator's Ruling". A review of the plaintiffs named here indicates that Michael Trombley was listed as number 400 in seniority before the arbitration and is listed as

number 396 after the arbitration. Jason Sleeper was 397 before the arbitration and was 393 after. Kevin Sullivan was number 399 before and moved to 394 after. Thomas Meringer moved from 393 prior to 392 after. Vincent Dudley was listed as number 397 after the arbitration. He is not listed on the roster of seniority, which predates the arbitration. On the roster of officers dated November 1, 2002, Dudley is listed as 413, Trombley is 412, Sullivan is 411, Sleeper is 409, Meringer is 407.[2]

Plaintiffs' statement of material facts allege in ¶ 24 that "Because if the plaintiffs had had greater seniority, they would have been either not laid off at all or recalled more quickly than they were, the plaintiffs have been adversely affected by the City's conduct." While the brief does not explain how, it refers to Exhibits C, I, J and K which were previously discussed, from which it is not at all clear how they would have been affected without the 1997 readjustment. The brief also refers to Exhibit B, the deposition of Sgt. Albano. From the deposition, the plaintiff claims that the impact of the different scenarios could establish whether someone would have been laid off or not or called back sooner or not. However, as noted in the deposition of Sgt. Albano, some of the documents contain the Union's "best guess" as to badge number, and that because badge numbers change with retirements or other grounds for people leaving, "it will never match number for number." (Albano Depo p. 37) Based on the state of the record, whether or not plaintiffs have suffered any cognizable injury is too speculative to make out an Equal Protection violation under § 1983.

---

[2] It should be noted that the listing of Dudley, Trombley and Sullivan in consecutive order raises questions as how,

5. The case involves an internal political dispute among union members, rather than a violation of civil rights.

The current dispute, considering it was the subject of arbitration and the fact that City is the subject of a "mirror image" case from minority officers, seems more akin to an internal union dispute requiring a political solution rather than court intervention.  As noted in Quinn v. City of Boston, 325 F,3d 18 (1st Cir. 2003) as to some issues of damages, the court declined to intervene, indicating the impact of other persons who were not parties weighed against a remedy for issues surrounding seniority issues:

> The court declines to enter any order regarding issues that might impact upon the contractually negotiated rights of other firefighters, such as preferences in the choice of vacation days, work assignments, or promotional eligibility, that are based on seniority determined by accrued time in actual service. To the extent that plaintiffs wish to pursue this matter it should be resolved by agreement with the Union representing the City's firefighters.

In a footnote, the court in Quinn noted that:

> Plaintiffs, at oral argument, agreed that retroactive seniority rights impacting on the rights accrued by other firefighters should be granted only with the Union's consent. Given plaintiffs' respect for the sensitivities involved, there is no reason for the court to inject itself into what are, in essence, collective bargaining issues. For similar reasons, plaintiffs have waived any request that the court order that they be granted retroactive seniority under the Civil Service Law.

A similar decision should be made here in light of the uncertainty as to the impact of any decision in favor of the plaintiffs. In the arbitration, the Union President noted that retroactive relief as to vacations "would cause an administrative nightmare" (Ex D. p.10) The Arbitrator, in formulating a remedy, specifically limited his decision by not affecting vacation or shift assignments in any retroactive or present application. More importantly,

---

if the realignment was carried out "one for one" each of these white officers were listed consecutively.

50223

the Arbitrator specifically prohibited any remedy, "even though he/she might have had a shorter layoff period under the newly reassigned badge numbers" as to any officer recalled prior to February 24, 2004. The Arbitrator noted this was equitable due to the failure to act on rights which were nine years old, and would prevent an "excessive remedy". (Ex. D. p. 19)

Under the Arbitrator's decision, all the plaintiffs in this case, other than Vincent Dudley, were barred from any remedy. As to Dudley, the record reveals that he was reinstated five days after the cutoff, on February 29, 2004. A claim under §1983 can be precluded if the prior arbitration award was so complete that the plaintiff could receive no additional relief in a federal suit. The Supreme Court has stated that "if the relief obtained by the employee at arbitration were fully equivalent to that obtainable under Title VII, there would be no further relief for the court to grant and hence no need for the employee to institute suit." *Gardner-Denver*, 415 U.S. at 51 n. 14, 94 S.Ct. at 1021 n. 14; *see also Strozier v. General Motors Corp.*, 635 F.2d 424, 426 (5th Cir.1981) (dismissing Title VII and § 1981 claims as fully satisfied where plaintiff received reinstatement and back pay from arbitration and where claim for injunctive relief relating to defendant's disciplinary system had been dismissed).

The reasoning is applicable here. Despite the nine year delay, the Arbitrator felt it was equitable to reassign badge numbers, avoiding any future damages, but denying any retroactive damages based on the equities. Similarly, the court here should avoid the imposition of liability for any retroactive impact based upon equitable principles.

50223

V.     CONCLUSION

Defendant, as the moving party cross motions for summary judgment and has submitted, both in opposition to plaintiffs' motion and in support of its cross motion, an affidavit and supporting documents, and references to the record submitted by plaintiffs, to show that the complaint is time barred, cannot attribute a violation to City policy makers, and, if defendant is not entitled to summary judgment, as the non-moving party and such facts reviewed in a light most favorable to defendant in considering plaintiffs' motion, plaintiffs are not entitled to summary judgment either.

Moreover, on the state of the record as it exists, whether or not the plaintiffs have suffered a cognizable injury is too speculative to establish entitlement to summary judgment on a claim for an Equal Protection violation under § 1983.

Based on the above arguments, defendant respectfully requests that its cross motion for summary judgment be ALLOWED, or in the alternative, that the plaintiffs motion for summary judgment be DENIED.

THE DEFENDANT BY:

Edward M. Pikula, Esq.
Associate City Solicitor
BBO# 399770
City of Springfield Law Department
36 Court Street
Springfield, MA 01103
(413) 787-6085
Fax: (413) 787-6173

**CERTIFICATE OF SERVICE**
Harold L. Lichten
Pyle, Rome Lichten, Ehrenberg & Liss-Riordan, P.C.
18 Tremont Street, Ste. 500
Boston, MA 02108

I hereby certify that I caused the within document to be served on plaintiff by delivering a copy to his above named Attorneys on this date.

Edward M. Pikula, Esq.          12/19/05

50223

## AFFIDAVIT OF PETER MURPHY

1.    I, Peter Murphy, on oath do say:

2.    From September 2002 until October 2005 I was employed by the City of Springfield as an
      Attorney handling Labor Relations issues. This work included representation with regard to
      the Springfield Police Department, including Arbitration over the issue of seniority and
      badge numbers.

3.    By way of background, in September of 2003 it was first brought to my attention that a
      controversy had arisen as to the order in which badge number assigned seniority.
      Specifically, I received a copy of a letter sent to the Board of Police Commissioners dated
      September 4, 2003 requesting copies of Civil Service lists of officers appointed since 1995.
      (Copy attached as Ex. 1)

4.    The Board of Police Commissioners was, at that time, the Appointing Authority for
      purposes of Civil Service. The Board was the policy-making entity for the Police
      Department, having the authority to hire, fire, discipline, enter into collective bargaining
      contracts on behalf of the City, and establish Rules and Regulations of the Department.
      (Copy of City Ordinance attached as Ex. 2)

5.    The Board was comprised of five civilians who served through mayoral appointment,
      which changed with mayoral administrations. There was a change in mayors in 1996
      leading to changes in the Board at that time. There was also a change in mayors in 2004
      leading to changes in the Board. In between 1996 and 2002, although the mayoral
      administration was the same, there were changes in the Board members.

6.    On several occasions between 1995 and 2003 (typically on an annual basis) the City
      distributed rosters to all patrolmen. These rosters noticed the patrolmen as to their seniority

in comparison to all other employees in the Union. To the best of my knowledge, at no time between 1995 to 2003 did any employee, nor any union representative, file a grievance disputing the method in which the City computed seniority.

7.    Since first receiving notice of the badge/seniority dispute, I have gained some knowledge of the history within the Police Department as to this complicated factual issue through a search of Labor Relations records, participation in negotiations over the issue, and participation in Arbitration.

8.    As a result, I have learned that the Union had negotiated Section 7.02 of the collective bargaining agreement in 1995. (Copy attached as Ex. 3).

9.    Meeting notes contained in the Labor Relation files for the City indicate that the Union was aware that the City had utilized a "one for one" (minority and majority) standard at the time of the recall after Police Department layoffs in 1989. (Copy of notes Attached as Ex. 4).

10.   From the notes, it appears that the 1989 "one for one" recall was apparently in response to complaints from the Massachusetts Commission Against Discrimination which had led to the Police Department not receiving exam grades, which had previously been the basis of seniority.

11.   At the arbitration hearing, Captain Cochrane testified that in 1997 he realigned the list "one for one", believing it was consistent with past practice, based on his conversations with Lt. Michael Finn. Lt. Finn had worked in the Chief's office at the time of the 1989 layoffs.

12.   Captain Cochrane indicated in his deposition that he had checked with Civil Service on this issue. (Cochrane Depo. P.   ) Civil Service approved the certified lists. (Copy attached as Ex. 5)

13.   To the best of my knowledge, the Board of Police Commissioners did not authorize
      Captain Cochrane's realignment of the lists "one for one" (minority and majority) when it
      occurred in 1997. To the best of my knowledge there is no evidence that the issue was ever
      brought to the attention of the Board of Police Commissioners until 2003. (Copy of letter
      Ex.6)

14.   After the issue came to the attention of the Board of Police Commissioners, in 2004, after a
      Union filed grievance over the "one for one" realignment in February 2004, the Police
      Commission authorized me to participate in an expedited arbitration in order to help sort
      out the facts.

15.   This resulted in an Arbitrator ordering a revision of Police Department seniority lists to
      reflect the order as listed on the Civil Service list from which the Officers were appointed,
      to comply with the collective bargaining agreement. (Copy attached to Pl. Br. as Ex.D) As
      noted by the Arbitrator, evidence of the impact of implementing the § 7.02 of the collective
      bargaining Agreement was offered and presented a mixed indication of the impact of the
      readjustment. Specifically a document showing the Police Academy Classes of 1996, 1997
      and 1998, which were affected by the layoff, (Exhibit 10 offered by the Union copy
      attached as Ex. 7)

16.   The local police Union and the City are defendants in a suit by minority officers objecting
      to the assignment of seniority pursuant to the Union contract. *See Toledo v. IBPO, Local
      364* , C. A. No. 04-30163-MAP. In that case the dispute centers on an internal Union matter
      as to what basis of seniority the Union should negotiate. This case is a mirror image of that
      case, with majority officers objecting to the 1997 assignment of seniority.

Signed under the penalty of perjury this 18th day of     December , 2005.

Peter Murphy

# Exhibit 2

2.56.310  Obstructing  of  fire  hydrants.  No  person shall throw or put, or cause to be thrown or put, any snow or ice or any other thing or material upon or against any fire hydrant in any street, lane, alley, park or common in the city.  (Prior code §8-36)

2.56.320  Vehicles obstructing private ways furnishing access for fire apparatus.  A.  No person shall permit a vehicle in his charge or control to remain unattended within the limits of private ways furnishing means of access for fire apparatus to any building.
B.  If any vehicle is found upon any private way in violation of this section, and the identity of the driver cannot be determined, the owner or person in whose name such vehicle is registered shall be held prima facie responsible for such violation.  (Prior code §8-37)


Chapter 2.58

BOARD OF POLICE COMMISSIONERS


Sections:

2.58.010    Established--Appointment and number of board.
2.58.020    Terms of office.
2.58.030    Qualifications of members.
2.58.040    Filling vacancies--Compensation.
2.58.050    Rules of government--Chairman.
2.58.060    Powers of mayor to be exercised by board.
2.58.070    Management and control of members and signal
            system.
2.58.080    Rules for maintenance of department.
2.58.090    Absences from department.
2.58.100    Adoption of rules and regulations for
            government and discipline.
2.58.110    Monthly meetings;--Annual estimate of
            necessary maintenance--Accounting for
            expenditures.

2.58.010  Established--Appointment and number of board. A board of police commissioners is established.  Such board shall consist of five (5) persons who shall be appointed by the mayor.  (Prior code §18-1)

2.58.020  Terms of office.  A.  The present members of the board of police commissioners shall hold their office for the term for which they were respectively appointed.
B.  Annually, thereafter, in the month of March, the mayor shall appoint to the board of police commissioners, two (2) members or one (1) member, depending upon the

appointments that expire on the succeeding first Monday of
April, and such new members of the board of police commis-
sioners shall hold office for terms of three (3) years from
the succeeding first Monday of April and until his succes-
sors are appointed.  (Prior code §18-2)

2.58.030  Qualifications of members.  A.  Not more than
three (3) members of the board of police commissioners shall
be of the same political party.
B.  No person shall be appointed a member of such board
who has not been a resident of the city for at least three
(3) years next prior to his appointment, who is a member of
the city council or who holds any political office for which
he receives compensation.
C.  Removal from the city, membership in the city coun-
cil or the holding of any such public office shall automat-
ically vacate the office of a member of such board.  (Prior
code §18-3)

2.58.040  Filling vacancies--Compensation.  A vacancy
in such board shall be filled in the manner of an original
appointment within thirty (30) days from its occurrence.
The members of such board shall serve without compensation.
(Prior code §18-4)

2.58.050  Rules of government--Chairman.  The board of
police commissioners may make rules for the government of
its procedure.  It shall choose one (1) of its members to be
chairman and may prescribe the length of his term.  (Prior
code §18-5)

2.58.060  Powers of mayor to be exercised by board.
The powers and duties vested in the mayor and the city coun-
cil by Chapter 244 of the Acts of 1909 shall be exercised
and performed by the board of police commissioners.  (Prior
code §18-6)

2.58.070  Management and control of members and signal
system.  The board of police commissioners shall, subject to
the provisions of this chapter, have the appointment, man-
agement and control of the members and employees of the po-
lice department and of the superintendent of the police sig-
nal system.  (Prior code §18-7)

2.58.080  Rules for maintenance of department.  The
board of police commissioners shall make such lawful rules
for the maintenance of the police department, including the
regulation, government and discipline of such members and
employees, and for the direction and control of those having
charge of such signal system, including employees thereof,
as it deems wise and proper.  (Prior code §18-8)

**2.58.090  Absences from department.** The board of police commissioners shall have the power to examine into absences of members and employees of the department, other than those allowed by law or ordinance, and may approve or disapprove the payment of salary for the period of any absences. (Prior code §18-9)

**2.58.100  Adoption of rules and regulations for government and discipline.** The rules and regulations for the government and discipline of the police department as adopted and promulgated by the former board of police commissioners in the year 1939 with all amendments thereto, a copy of which rules and regulations and amendments thereto, duly attested, is on file with the city clerk, are adopted as and shall continue to be the lawful rules for the maintenance of the police department, and for the regulation, government and discipline of all members and employees thereof, until the adoption and promulgation of rules and regulations as heretofore provided. (Prior code §18-10)

**2.58.110  Monthly meetings--Annual estimate of necessary maintenance--Accounting for expenditures.  A.** The board of police commissioners shall meet at least once a month and shall annually in the month of January prepare and communicate to the mayor an estimate of the amount of money necessary for the maintenance and use of the department for the then current fiscal year, itemized as the mayor may require.

B.  It shall keep or cause to be kept an accurate and detailed account of all expenditures of the police department, and annually in the month of January shall render to the city council an itemized and exact account of the same. (Prior code §18-11)


Chapter 2.60

POLICE DEPARTMENT


Sections:

I.  DEPARTMENT

2.60.010  Composition of department.
2.60.020  Rank and grade of members.
2.60.030  Number of captains, lieutenants and
          sergeants.
2.60.040  Days of work for policemen.
2.60.050  Authority and precedence of chief--Subject to
          rules, orders and ordinances.
2.60.060  Preferring and investigation of charges.

2.60.070   Method of penalizing members and employees.
2.60.080   Approval and certification of payrolls--
           Swearing to payroll.
2.60.090   Order of precedence of members.
2.60.100   Bond of chief and deputies.
2.60.110   Appointment of employees.
2.60.120   Indemnification of police officers for
           damages.
2.60.130   Duties of superintendent of police signal
           system.
2.60.140   Police training school not affected.
2.60.150   Enforcement of ordinances.

           II.   TRAINING SCHOOL

2.60.160   Establishment.
2.60.170   Course of training.
2.60.180   Authority to require regular police to take
           course.
2.60.190   Institution and maintenance of school.

           III.   INJURY, ILLNESS AND DISABILITY OF
                  MEMBERS OF DEPARTMENT

2.60.200   Temporary injury, illness or disability in
           performance of duty--Full pay for twelve (12)
           weeks.
2.60.210   Temporary injury, illness or disability in
           performance of duty--Extension of time of
           payment.
2.60.220   Temporary injury, illness or disability in
           performance of duty--Notice of injury.
2.60.230   Temporary injury, illness or disability in
           performance of duty--Evidence of injury.
2.60.240   Temporary injury, illness or disability not
           connected with duties--Full pay for twelve
           (12) weeks.
2.60.250   Temporary injury, illness or disability not
           connected with duties--Self-inflicted or
           similarly caused injuries.
2.60.260   Temporary injury, illness or disability not
           connected with duties--Extension of time of
           payment.
2.60.270   Temporary injury, illness or disability not
           connected with duties--Notice of injury.
2.60.280   Temporary injury, illness or disability not
           connected with duties--Requiring evidence of
           validity of claim.
2.60.290   Commissioners may disregard failure to give
           notice.
2.60.300   Notice when chief incapacitated.

I.  DEPARTMENT

**2.60.010  Composition of department.** The police department shall consist of the board of police commissioners, one (1) chief of police, two (2) deputy chiefs of police, and as many policemen as the city council may authorize from time to time, and four (4) policewomen (all of whom shall be also police officers), and as many special police officers as in the opinion of the board of police commissioners shall be necessary. (Prior code §18-12)

**2.60.020  Rank and grade of members.** The rank and grade of members of the police department below the board of police commissioners shall be as follows: Chief; deputy chief; captain; lieutenant; radio engineer with a rank not higher than a lieutenant, such rank to be determined by the board of police commissioners; sergeant; patrolman, grade A; patrolman, grade B; patrolman, grade C; policewoman; and special police officer. (Prior code §18-13)

**2.60.030  Number of captains, lieutenants and sergeants.** The board of police commissioners shall have authority to increase the number of captains, lieutenants, sergeants and policewomen whenever in their judgment the services may require it; provided, that the total number of policemen shall not be increased and; provided further, that the board is first authorized to do so by the annual budget, a supplementary budget or other appropriation order passed by the city council and approved by the mayor. (Prior code §18-14)

**2.60.040  Days of work for policemen.** A.  The provisions of Section 16C of Chapter 147 of General Laws is accepted and the services of all policemen shall be restricted to five (5) days in any one (1) week; provided, that when the chief of police or other officer designated by him determines that public necessity so requires, services in excess of the days mentioned in this section may be authorized.
    B.  The compensation of any policeman shall not be reduced by reason of this section.  (Prior code §18-15)

**2.60.050  Authority and precedence of chief--Subject to rules, orders and ordinances.** A.  The chief shall have precedence over all members and employees of the police department below the grade of chief, and such members and employees shall at all times be subject to his command and control.
    B.  He shall, subject to the rules and regulations of the board of police commissioners, from time to time issue orders consistent with the laws of the Commonwealth and the ordinances of the city as may be necessary for the

91

maintenance of proper discipline in the department, for the detail and duties of its members and employees, and for the use and disposition of its equipment.  (Prior code §18-16)

2.60.060  Preferring and investigation of charges.  A. Except as otherwise provided by law, the chief of police may prefer charges against any member or employee of the department.

B.  Such charges shall be specific and in writing and may contain a recommendation for immediate suspension pending investigation.

C.  The board of police commissioners shall forthwith proceed to investigate such charges and recommendation and shall with reasonable dispatch render its decision and take suitable action thereon.  (Prior code §18-17)

2.60.070  Method of penalizing members and employees. The board of police commissioners may, provided, however, that the procedure established by General Laws, Chapter 31 is followed, penalize any member or employee of the department by reprimand, the performance of extra or regular duty without pay, suspension with loss of pay, reduction in rank or grade, or dismissal.  (Prior code §18-18)

2.60.080  Approval  and  certification  of  payrolls-- Swearing to payroll.  A.  The chief of police, or the deputy chief of police in the absence of the chief, may approve payrolls, and certify them to the city auditor.

B.  The chief of police, and the deputy chief of police in the absence of the chief, is to be considered as the head of the department for the purpose of swearing to every payroll, bill or account for salary or compensation to any person in the service of the police department within the provisions of Section 4.16.030.  (Prior code §18-19)

2.60.090  Order of precedence of members.  The order of precedence among members of the police department below the grade of chief shall be deputy chief, captain, lieutenant and sergeant, and among the members of the same rank.  All members and employees of the department shall at all times be subject to the command of the ranking officer present. (Prior code §18-20)

2.60.100  Bond of chief and deputies.  The chief and deputy chiefs, before entering upon the duties of their respective offices, shall give a bond for the faithful performance thereof, the chief in the sum of two thousand dollars ($2,000) and each deputy chief in the sum of one thousand five hundred dollars ($1,500), with sufficient sureties to be approved by the board of police commissioners.  (Prior code §18-21)

**2.60.110  Appointment of employees.**  The board of police commissioners may, subject to the provisions of law, and subject to the provisions of Section 3.08.060, appoint such employees as it may deem necessary and such employees shall be subject to the provisions of Sections 2.60.050 to 2.60.070 and Section 2.60.090.  (Prior code §18-22)

**2.60.120  Indemnification of police officers for damages.**  A police officer shall, subject to the provisions of law, be indemnified in such amount as may be recommended by the indemnification board as provided by General Laws, Chapter 41, Section 100 for expenses or damages to persons or personal property sustained by him while legally acting as police officer in such sum as may be recommended by the indemnification board as provided by General Laws, Chapter 41, Section 100.  (Prior code §18-23)

**2.60.130  Duties of superintendent of police signal system.**  A.  The superintendent of the police signal system shall have supervision and general charge and care of the apparatus, machinery and fixtures of the police signal telegraph system and shall see that they are kept in good working order, for which he shall be responsible to the chief of police.
B.  He shall keep an accurate account of all extra labor and material needed for the proper maintenance of such system and all the expense of such maintenance shall be charged to the account of the police department.
C.  He shall, annually, in the month of January, prepare and submit to the board of police commissioners an estimate of the amount of money necessary for the proper care, maintenance and extension of the police signal system for the then current fiscal year.  (Prior code §18-24)

**2.60.140  Police training school not affected.**  Nothing contained in Sections 2.58.010 through 2.58.110 and 2.60.010 through 2.60.150 shall in any manner affect Sections 2.60-.160 through 2.60.190.  (Prior code §18-25)

**2.60.150  Enforcement of ordinances.**  The chief of police, deputy chief of police and all police officers are especially charged to see that the provisions of all ordinances are enforced.  (Prior code §18-26)

## II.  TRAINING SCHOOL

**2.60.160  Establishment.**  A police training school is created and established for the training and instruction of all reserve police officers and of any regular police officers who may be found to require it.  (Prior code §18-27)

**2.60.170  Course of training.**  The police training school shall provide a thorough course of training and instruction in the laws and the manner of their enforcement, the powers and duties of a police officer, personal hygiene and physical development, the art of self-defense, the art of handling resisting prisoners with the least necessary application of force and the least possible injury to the prisoner, the art of accurate snap shooting with the revolver, pistol and riot-gun, and the proper deportment and conduct of a police officer.  (Prior code §18-28)

**2.60.180  Authority to require regular police to take course.**  Every regular police officer shall take a course in the police training school, or any part or parts thereof, or the equivalent thereof of such course, whenever the board of police commissioners or other authority in control of the police department shall deem it desirable.  (Prior code §18-29)

**2.60.190  Institution and maintenance of school.**  The training school shall be instituted and maintained by the board of police commissioners or by such other body or officers as may hereafter be invested with the supervision and control of the police department.  (Prior code §18-30)

### III.  INJURY, ILLNESS AND DISABILITY OF MEMBERS OF DEPARTMENT

**2.60.200  Temporary injury, illness or disability in performance of duty--Full pay for twelve (12) weeks.**  Any member of the police department in active service, injured, ill, or disabled while in the performance of his duties as a member of such department, if the injury, illness or disability renders him temporarily unable to attend to his regular duties, shall receive his full pay from the city during his temporary injury, illness or disability, not to exceed twelve (12) weeks in all for each such injury, illness or disability.  (Prior code §18-31)

**2.60.210  Temporary injury, illness or disability in performance of duty--Extension of time of payment.**  The time for receiving full pay during a temporary injury, illness or disability may be extended beyond such twelve (12) week period for each injury, illness or disability at the discretion of the board of police commissioners.  (Prior code §18-32)

**2.60.220  Temporary injury, illness or disability in performance of duty--Notice of injury.**  Members of the police department shall give notice in writing, or cause notice to be given to the chief, in all cases of injury, illness or disability within three (3) days of the date of the

occurrence claimed to be the cause of the injury, illness or disability and all such claims shall be submitted to the commissioners and the chief for their approval. (Prior code §18-33)

2.60.230 Temporary injury, illness or disability in performance of duty--Evidence of injury. The commissioners and the chief are empowered to take such steps and require such evidence as they deem necessary to be satisfied of the validity of the claim for injury, illness or disability. (Prior code §18-34)

2.60.240 Temporary injury, illness or disability not connected with duties--Full pay for twelve (12) weeks. Any member of the police department in active service, who suffers an injury, illness or disability not connected with the performance of his duties as a member of such department, if the injury, illness or disability renders him temporarily unable to attend to his regular duties, shall receive his full pay from the city during his temporary injury, illness or disability, not to exceed a total of twelve (12) weeks in any twelve (12) month period. (Prior code §18-35)

2.60.250 Temporary injury, illness or disability not connected with duties--Self-inflicted or similarly caused injuries. The board of police commissioners is directed and empowered, if the injury, illness or disability be self-inflicted or self-imposed, or if there is any other good cause, to deny a member of the department sick relief under Section 2.60.240. (Prior code §18-36)

2.60.260 Temporary injury, illness or disability not connected with duties--Extension of time of payment. The time for receiving full pay during any temporary injury, illness or disability may be extended beyond such total twelve (12) week period at the discretion of the board of police commissioners. (Prior code §18-37)

2.60.270 Temporary injury, illness or disability not connected with duties--Notice of injury. Members of the police department shall give notice in writing, or cause notice to be given to the chief, in all cases of injury, illness or disability within three (3) days of the date of the commencement of such injury, illness or disability, and all such claims shall be submitted to the commissioners and the chief for their approval. (Prior code §18-38)

2.60.280 Temporary injury, illness or disability not connected with duties--Requiring evidence of validity of claim. The commissioners and the chief are empowered to take such steps and require such evidence as they deem necessary to be satisfied of the validity of the claim for injury, illness or disability. (Prior code §18-39)

2.60.290  Commissioners may disregard failure to give notice.  In case any member, injured, ill or disabled fails to give notice in writing or cause notice to be given to the chief as required by Sections 2.60.220 and 2.60.270, within the required three (3) days, such failure may be disregarded by the commissioners in awarding payments during injury, illness or disability, if, in the discretion of the commissioners it is of the opinion that equity and fairness require it.  (Prior code §18-40)

2.60.300  Notice when chief incapacitated.  In case of the injury, illness or disability of the chief, the notice of such injury, illness or disability required by Sections 2.60.200 through this section shall be given by the chief to the chairman of the board of police commissioners.  (Prior code §18-41)

Chapter 2.62

CITY PLANNING

Sections:

2.62.010    Planning board--Establishment--Powers and duties generally.
2.62.020    Planning board--Composition--Appointment and terms of members--Vacancies.
2.62.030    Planning board--Officers and employees.
2.62.040    Referring matters to planning board before final action.
2.62.050    City planning department--Establishment-- Powers and duties generally.
2.62.060    City planning department--Studies, plans and reports.
2.62.070    Master or study plan of city.
2.62.080    Planning director.
2.62.090    Board of appeals--Establishment.
2.62.100    Board of appeals--Composition--Appointment, term and qualifications of members and associate members.
2.62.110    Board of appeals--Removal of members-- Vacancies--Inability to act.
2.62.120    Board of appeals--Chairman and clerk.
2.62.130    Board of appeals--To act as board of appeals under building and zoning ordinances.
2.62.140    Board of appeals--Powers generally.

2.62.010  Planning  board--Establishment--Powers  and duties generally.  A planning board under the provisions of General Laws, Chapter 41,  Section 81A is established.  Such

# Exhibit 3

COYLE, DUNBAR, GEOFFRION & RIDEOUT

ATTORNEYS AT LAW

KEVIN B. COYLE
PATRICIA M. DUNBAR
ALFRED GEOFFRION, JR.
ANNE M. RIDEOUT

101 STATE STREET
SPRINGFIELD, MA 01105

(413) 787-1524
FAX (413) 787-1703

June 7, 1995


Atty. James E. Dowd
Labor Relations Department
1600 East Columbus Avenue
Springfield, MA 01103


RE:  Local 364, I.B.P.O., Contract Negotiations


Dear Jim:

Enclosed is draft language which hopefully will finalize
these issues for inclusion in our new agreement.  The
substance of the changes is as follows:

7.02    This will change the badge number criteria for
officers with the same date of appointment to academic
standing in the academy.  The old language of exam
score order has not been followed for years due to the
absence of exam scores on the Civil Service lists, and
the practice has evolved of using order of appearance
on the list.  The new language will hopefully provide
an incentive for recruits, and a reward for those who
do well at the academy.

7.05    This language will address reinstatements, not
currently addressed by the agreement.  In sum, this
language will deduct from seniority, for badge number
and those benefits and priorities which are based on
badge number, the period during which a reinstated
employee was not employed by the Springfield Police
Department.

17.07    This language will provide compensation for
those mandatory appearances not currently covered by
court time, while giving the Department the authority
to control the timing, length, etc. of such
appearances, and the authority to submit a bill for

Atty. James E. Dowd
June 7, 1995
Page Two

such appearances, even if the officer did not receive any additional compensation for appearing.

<u>Article 30</u>   This new article will state the policy for probationary periods.   Those hired after July 1, 1995 will serve a twelve month probationary period after the academy.   This resolves the long disagreement between the City and the union over the proper computation of the probationary period for new hires.   The union's position will apply to persons hired before July 1, 1995, and the City's position will apply to persons hired after July 1, 1995.   The rest of the article is intended to reflect Civil Service law for Civil Service lateral transfers, and original appointments from non Civil Service departments.

I am sending a copy of this language to Chief Spellacy and Deputy Chief Fitchet, as these issues have come up in our labor/management meetings, and they have requested to be kept advised.

Very truly yours,

Kevin B. Coyle

KBC/c
Encl.

cc:  Richard D. Trombly, President, Local 364, I.B.P.O.
     Daniel W. Spellacy, Chief of Police
     William J. Fitchet, Deputy Chief of Police

# Exhibit 4

Meeting        CITY AND IBPO LOCAL #364
March 29, 1995    2 PM  Labor Relations Dept.
Present:    City - Jim Dowd, Clem Chelli,
           IBPO - Atty Kevin Coyle, Chet Ardolino, Andy McQuade,
                  Richard Trombley, Rachel Thomas, Dennis Gallacher,
                  Shawn Kearney (late).

Parties signed a Memorandum of Agreement October 1, 1994
City prepared and sent to Atty. Coyle a draft copy of the CBA.
Coyle reviewed the CBA and has one modifcation re: Article 17.01
Court Time - See attached proposal.

Seniority   As the conclusion of the last set of negotiations the Union made
it known that they wanted to review & discuss seniority.  Some time ago Mary
Andrews filed a grievance regarding Badge Number Seniority.  She was
appointed a Meter Maid in 1971, a Provision Police Woman in 1974 and a
Permanent Police Officer in 1977.  There was a definite question regarding
her time as a Metermaind.  In light of fact that the Police Woman
classification was within the IBPO bargaining unit and covered by the CBA it
was determined that her seniority for this period definitely should count.

       Additional questions were raised regarding the seniority of officers
who left the job and came back.  Stelzer had no problem with the Union on
this issue.  The Understanding between the Dept Management and the Union was
thay they just did not credit the individual for the time he or she was
absent from the job.  The problem is that, that is not what is says in the
contract.  The issue got lost in the shuffle of bargaining.  Rachel Thomas's
recollection of the understanding with the Chief was parties agreed to use
"Actual time served (with the Department).

       The seniority issue was raised again with Mike Carney.  Carney
reached a settlement with the City.  Included was a retroactive date for
seniority.  Coyle advised Carney that seniority is an issue reserved to
collective bargaining.  It can not be negotiated individually.

1.  Review of Article 7    Seniority -

    7.01   OK
    7.02   Makes reference to seniority preference predicated upon the of
signing the book in the order of the officer's exam grade.  A problem exists
because the grades are no longer given to the department.  The Department
does not get the test scores because   MCAD complained about the practice.
Dowd - Maybe we should delete this article.
                                        OK
       Coyle wants to use the class rank in the academy as the criteria
or signing the book and seniority within the department.  The lack of a
definitive tie-breaker for the members within a class was a problem during
the 1989 layoffs.  Dowd - Civil Service allows the appointing authority,
when employees have equal seniority, to choose which employee they want to
keep.  Coyle - The tie-breaker is negotiable.

                              -1-

Tremblay - In the past the Cadets signed the book first, then the Veterans, and then the Score off the list. The Veterans Preference is only eligibility for Hiring and not for seniority. Coyle thought that to avoid a controversy, the Department laid off the whole class in 1989. When it was time for recall, they did one for one (back and white).

7.03
7.04  Date of Appointment. Negotiations  re: Provisional Appointment. Maybe permanent two years later.

Proposal-  Aggregate total time served as a Police Officer in the Department for the purposes of shift assignment, vacation selection, etc. City feelsthat this items should be specifically defined & listed. Coyle counters - for the purposes of Badge Number from these seniority issues would spin-off.  .

Coyle - This may require a ratification meeting of the body.
Dowd - We do not want to be inconsistent with Section 33 of MGLA Chapter 31. Coyle does not see this as a problem. Dowd - It might be a problem for those employees who transfered in. Coyle will prepare language. Coyle believes that these issues of seniority are purely negotiable. Dowd - What determines the sitting for the exams? Coyle -Strict Civil Service - the date of appointment.

2.  Court Time - Civil Proceedings.

Officers want credit for testifying at a Civil Proceeding. The Officers involved in the most recent case were Ronnie Goodrow and McCann. It involved election law; residency within a specific district, between Robert Collamore and State Representative Scibelli. The officers   were subpoenaed to Boston. The Department paid the men, although under the CBA they didn't have to. The guys wanted travel time. The Commission was responsive to their situation.

The City believes that in civil matters the obligation to compensate the officers lies with the individual who has the officer sub-poenaed. Coyle believes that the cannon of ethics prohibit such compensation. You are only supposed to compensate the witness for their out of pocket expenses. Dowd - It is done all the time! Coyle - It isn't right. One of the problems is that under a civil subpoena or summons no notification is provided to the department. The City hates to open up the process any further. We do not want to underwrite the prosecution of claims in private civil cases. Dowd believes that officers who are subpoenaed are compensated for reasonable time lost,  just like doctors or lawyers. Coyle - Different rules apply for experts. The Union wants to be able to submit the sub-poenas to the Chief.

Coyle will submit a proposal on this issue!

3.  Evaluation Committee -(This is in regard to the Community Policing language in the CBA. The Committee will perform an evaluation as to the effectiveness of the Community Policing units which impacts a raise effective June 30th 1996.)

2

# Exhibit 5



THE COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE FOR ADMINISTRATION AND FINANCE
HUMAN RESOURCES DIVISION
ONE ASHBURTON PLACE, BOSTON, MA 02108

ARGEO PAUL CELLUCCI
Governor

CHARLES D. BAKER
Secretary

JAMES J. HARTNETT, JR.
Personnel Administrator

October 23, 1997

Gerald Phillips, Chairman
Board of Police Commissioners
130 Pearl St.
Springfield, MA

Dear Mr. Phillips:

Enclosed is the final approval for the candidates selected for permanent full time Police Oficers, Springfield Police Department, from certification #961295 dated January 13, 1997.

Please note that the name of Brian Beliveau has been removed from the appointment forms. A reinstatement has been approved for Mr. Beliveau effective April 7, 1997.

Also, be advised that this office has no record of the transfer of Michael Sedergren to the Springfield Police Department. A transfer form is needed to complete this action.

Should you have any questions, please contact Marie Greig of the Public Safety Unit at (617) 727-3777 extension 375.

Sincerely,

Brenda Geoghan, Assistant Director
Test Administration
Public Safety Unit

BG:mg
Copy to: Toni Wolfman

REQUEST FOR REINSTATEMENT OR RE-EMPLOYMENT          DEPARTMENT OF PERSONNEL ADMINISTRATION
FROM PA 2044-6-82

To be filled out in quadruplicate and all forms sent to the Department of Personnel Administration. If a local official other than the agency head
requires a copy, such as a Personnel Office, one extra copy should be forwarded with the set of forms.

City or Town __Springfield__
Department __Police__
Division _____
Date __4/7/97__

*97119*

To the Personnel Administrator
One Ashburton Place, Boston, MA 02108

     Request is made to reinstate or re-employ:

Name __Brian Beliveau__
Address __24 Taylor st. Spfld. MA 01103__

## POSITION TO WHICH REINSTATEMENT IS PROPOSED

Title: _____Police Recruit_____
Salary: $__530.00__ per __week__

Permanent_____ X _____ Temporary_____ Military Substitute _____
Full-time_____ X _____ Part-time_____ Intermittent_____ Recurrent _____
Duties of Position_____ All duties require of a Police Recruit _____
_____
_____
_____
_____
_____
_____
_____

Is position newly created? __NO__  If not, state name of previous incumbent:
Name __Brian Beliveau_____ Last date of PAID employment __11/8/96__

## POSITION FORMERLY OCCUPIED BY EMPLOYEE WHOSE REINSTATEMENT IS PROPOSED

Title: __Police Recruit_____
Salary: $__530.00__ per __week__

Last date of PAID employment__ 11/8/96 __
Reason for termination of service _____ Resigned do to personal reason's _____
_____

        * * * * * *

Reason for requested reinstatement: _____ Department started new training Academy _____

If reinstatement is after _____
separation from service, _____
state reasons why it _____
would be in the public _____
interest: _____
Effective date of reinstatement: __4/7/97__
If reinstatement is temporary, to end: _____

APPROVED
10-23-97
DEPARTMENT OF
PERSONNEL
ADMINISTRATION
BY _____

Signed _____
     ( Officer authorized by law to make appointments)

Typed Name __Gerald Phillips__

Typed Title __Chairman, Board of Police Comm.__

# AUTHORIZATION OF EMPLOYMENT FORM 14    DEPARTMENT OF PERSONNEL ADMINISTRATION

| City or Town | Springfield | | Date | May 5, 1997 |
|---|---|---|---|---|
| Department | Police | | Division | 210 |
| | | | Requisition/Certification Number | 96-1295 |

## TO THE APPOINTING OFFICER:

Authority is hereby given to fill the vacancy(ies) identified on the above referenced requisition by selecting from among the applicants listed on the attached certification in accordance with the instructions which appear thereon.

### DESCRIPTION OF POSITION TO BE FILLED

Position Title: Police Officer    Number of Vacancies: 60    Salary Rate: 530.

Permanent [X]    Temporary [ ]    Military Substitute [ ]    Full Time [X]    Part Time [ ]
Intermittent [ ]    Reserve [ ]

_____

Personnel Administrator

## NOTIFICATION OF EMPLOYMENT UNDER THE ABOVE AUTHORIZATION

To the Personnel Administrator:

As the legal Appointing Authority I have selected the undersigned individuals for appointment (or promotion) in accordance with the law and the above authorization as follows:*

I, the signed appointee, hereby certify, under the penalties of perjury, that I have not paid and have agreed not to pay, and to the best of my knowledge, no other person has paid nor agreed to pay any money or other thing of value to any person in anticipation or as a result of my appointment. I hereby accept the appointment with the understanding that, under the Civil Service Law and Rules, appointments are governed as follows:

- Permanent appointments are subject to a probationary period of six months (twelve months for police and fire forces).
- Temporary appointments are for the duration of the vacancy.
- Military substitute appointments are temporary subject to the provisions of Chapter 708, Acts of 1941, as amended.

| Date Of Birth | Name, Home Address, S. S. # of Appointee | Employment Date | Appointee's Signature |
|---|---|---|---|
| 12/12/71 | ~~Beliveau, Brian, 24 Taylor Street Springfield, MA 01103 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~~ | ~~4/07/97~~ | *Brian G. Beliveau* |
| 10/26/72 | Gahm, David, 3 Sumner Avenue Springfield, MA 01108 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 | 4/07/97 | *David C. Gahm* |
| 11/20/63 | Tyburski, Stephen, 249 West Street, Belchertown, MA 01007 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 | 4/07/97 | *Stephen J. Tyburski* |
| 11/15/71 | Curley, Martin, 33 Milford Street Springfield, MA 01107 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 | 4/07/97 | *Martin F. Curley* |
| 6/13/73 | Sharpe, Jayme, 37 Manor Court, Springfield, MA 01118 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 | 4/07/97 | *Jayme Sharpe* |
| 4/06/73 | Corey, John, 4 Holly Court Indian Orchard, MA 01151 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 | 4/07/97 | *John Corey* |

*See reverse of this form

Signed: _____    BY: _____

(Officer authorized by law to make appointments)

GERALD PHILLIPS, CHAIRMAN, BOARD OF POLICE COMMISSIONERS

Name    (please print or type)    Title

| If appointee is in military service, statement to that effect should be made. |
|---|

This form must be properly completed, returned to the Department of Personnel Administration and approved before the Auditor will authorize payment of salary. Please file reports early enough to eliminate the necessity of withholding pay.

AUTHORIZATION OF EMPLOYMENT  FORM 14    DEPARTMENT OF PERSONNEL ADMINISTRATION

| City or Town | Springfield | Date | May 5, 1997 |
|---|---|---|---|
| Department | Police | Division | 210 |
| | | Requisition/Certification Number | 96-1295 |

TO THE APPOINTING OFFICER:
Authority is hereby given to fill the vacancy(ies) identified on the above referenced requisition by selecting from among the applicants listed on the attached certification in accordance with the instructions which appear thereon.

### DESCRIPTION OF POSITION TO BE FILLED

| Position Title: Police Officer | Number of Vacancies: 60 | Salary Rate: 530. |
|---|---|---|

Permanent [X]    Temporary [ ]    Military Substitute [ ]    Full Time [X]    Part Time [ ]
Intermittent [ ]    Reserve [ ]

_____
Personnel Administrator

NOTIFICATION OF EMPLOYMENT UNDER THE ABOVE AUTHORIZATION
To the Personnel Administrator:
    As the legal Appointing Authority I have selected the undersigned individuals for appointment (or promotion) in accordance with the law and the above authorization as follows:*

    I, the signed appointee, hereby certify, under the penalties of perjury, that I have not paid and have agreed not to pay, and to the best of my knowledge, no other person has paid nor agreed to pay any money or other thing of value to any person in anticipation or as a result of my appointment.  I hereby accept the appointment with the understanding that, under the Civil Service Law and Rules, appointments are governed as follows:

- Permanent appointments are subject to a probationary period of six months (twelve months for police and fire forces).
- Temporary appointments are for the duration of the vacancy.
- Military substitute appointments are temporary subject to the provisions of Chapter 708, Acts of 1941, as amended.

| Date Of Birth | Name, Home Address, S. S. # of Appointee | Employment Date | Appointee's Signature |
|---|---|---|---|
| 12/20/74 | Seder, Edward, 94 Mallowhill Road Springfield, MA 01129  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 | 4/07/97 | |
| 6/18/74 | Reigner, Daniel, 99 Wait Street Springfield, MA 01104  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 | 4/07/97 | |
| 8/21/73 | Twining, Christopher, 1218 Page Blvd Springfield, MA 01104  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 | 4/07/97 | |
| 1/12/71 | Berte, William, 350 Meadow St., Apt 21 Agawam, MA 01001  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 | 4/07/97 | |
| 7/28/73 | LeBlanc, Daniel, 60 Burnside Terrace Springfield, MA 01118  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 | 4/07/97 | Daniel LeBlanc |
| 5/15/64 | Diaz, Jose, 101 Bancroft Street Springfield, MA 01104  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 | 4/07/97 | |

See reverse of this form                    BY: _____
                        Signed: _____    (Officer authorized by law to make appointments)

| If appointee is in military service, statement to that effect should be made. | GERALD PHILLIPS, CHAIRMAN, BOARD OF POLICE COMMISSIONERS |
|---|---|
| | Name  (please print or type)    Title |

This form must be properly completed, returned to the Department of Personnel Administration and approved before the Auditor will authorize payment of salary.  Please file reports early enough to eliminate the necessity of withholding pay.

**AUTHORIZATION OF EMPLOYMENT  FORM 14     DEPARTMENT OF PERSONNEL ADMINISTRATION**

| | | | |
|---|---|---|---|
| City or Town | Springfield | Date | May 5, 1997 |
| Department | Police | Division | 210 |
| | | Requisition/Certification Number | 96-1295 |

**TO THE APPOINTING OFFICER:**
Authority is hereby given to fill the vacancy(ies) identified on the above referenced requisition by selecting from among the applicants listed on the attached certification in accordance with the instructions which appear thereon.

### DESCRIPTION OF POSITION TO BE FILLED

Position Title: Police Officer          Number of Vacancies: 60          Salary Rate: 530.
Permanent [X]    Temporary [ ]    Military Substitute [ ]    Full Time [X]    Part Time [ ]
Intermittent [ ]    Reserve [ ]

_____
Personnel Administrator

**NOTIFICATION OF EMPLOYMENT UNDER THE ABOVE AUTHORIZATION**
To the Personnel Administrator:
   As the legal Appointing Authority I have selected the undersigned individuals for appointment (or promotion) in accordance with the law and the above authorization as follows:*

   I, the signed appointee, hereby certify, under the penalties of perjury, that I have not paid and have agreed not to pay, and to the best of my knowledge, no other person has paid nor agreed to pay any money or other thing of value to any person in anticipation or as a result of my appointment.  I hereby accept the appointment with the understanding that, under the Civil Service Law and Rules, appointments are governed as follows:
- Permanent appointments are subject to a probationary period of six months (twelve months for police and fire forces).
- Temporary appointments are for the duration of the vacancy.
- Military substitute appointments are temporary subject to the provisions of Chapter 708, Acts of 1941, as amended.

| Date Of Birth | Name, Home Address, S. S. # of Appointee | Employment Date | Appointee's Signature |
|---|---|---|---|
| 7/18/68 | Dumas, Michael, 252 Parker Street Indian Orchard, MA 01151  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 | 4/07/97 | |
| 7/04/73 | Kenney, Mark II, 31 Miller Street, Springfield, MA 01104  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 | 4/07/97 | |
| 7/04/68 | Vega, Rafael, 48 Worthy Street Springfield, MA 01104  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 | 4/07/97 | |
| 7/17/71 | LaBelle, Richard Jr., 76 Wayside St. Springfield, MA 01118  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 | 4/07/97 | |
| 2/24/69 | Lockwood, Howard, 67 Noel Street Springfield, MA 01108  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 | 4/07/97 | |
| 3/13/65 | Tatro, Ronald, 135 White Street, #1 Springfield, MA 01108  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 | 4/07/97 | |

See reverse of this form

Signed: _____  BY: _____

(Officer authorized by law to make appointments)

GERALD PHILLIPS, CHAIRMAN, BOARD OF POLICE COMMISSIONERS
Name    (please print or type)    Title

If appointee is in military service, statement to that effect should be made.

This form must be properly completed, returned to the Department of Personnel Administration and approved before the Auditor will authorize payment of salary.  Please file reports early enough to eliminate the necessity of withholding pay.

**AUTHORIZATION OF EMPLOYMENT  FORM 14      DEPARTMENT OF PERSONNEL ADMINISTRATION**

| City or Town | Springfield | Date | May 5, 1997 |
|---|---|---|---|
| Department | Police | Division | 210 |
| | | Requisition/Certification Number | 96-1295 |

**TO THE APPOINTING OFFICER:**

Authority is hereby given to fill the vacancy(ies) identified on the above referenced requisition by selecting from among the applicants listed on the attached certification in accordance with the instructions which appear thereon.

**DESCRIPTION OF POSITION TO BE FILLED**

| Position Title: Police Officer | Number of Vacancies: 60 | Salary Rate: 530. |
|---|---|---|

Permanent [X]   Temporary [ ]   Military Substitute [ ]   Full Time [X]   Part Time [ ]
Intermittent [ ]   Reserve [ ]

_____

Personnel Administrator

**NOTIFICATION OF EMPLOYMENT UNDER THE ABOVE AUTHORIZATION**

To the Personnel Administrator:

As the legal Appointing Authority I have selected the undersigned individuals for appointment (or promotion) in accordance with the law and the above authorization as follows:*

I, the signed appointee, hereby certify, under the penalties of perjury, that I have not paid and have agreed not to pay, and to the best of my knowledge, no other person has paid nor agreed to pay any money or other thing of value to any person in anticipation or as a result of my appointment. I hereby accept the appointment with the understanding that, under the Civil Service Law and Rules, appointments are governed as follows:

- Permanent appointments are subject to a probationary period of six months (twelve months for police and fire forces).
- Temporary appointments are for the duration of the vacancy.
- Military substitute appointments are temporary subject to the provisions of Chapter 708, Acts of 1941, as amended.

| Date Of Birth | Name, Home Address, S. S. # of Appointee | Employment Date | Appointee's Signature |
|---|---|---|---|
| 5/16/64 | Velazquez, Hector, 299 Chapin Terrace Springfield, MA 01104    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 | 4/07/97 | |
| 12/03/64 | Berrios, Angel, 54 Abbe Avenue Springfield, MA 01107    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 | 4/07/97 | |
| 4/28/68 | Murphy, Sean, 15 Blodgett Street Springfield, MA 01108  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 | 4/07/97 | |
| 4/14/70 | Espinosa, Rodolfo, 11 Bowdoin Street Springfield, MA 01109  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 | 4/07/97 | |
| 3/09/69 | Kelly, William, 763 Dickinson Street Springfield, MA 01108  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 | 4/07/97 | |
| 5/27/65 | Ashworth, Kevin, 187 Sunrise Terrace Springfield, MA 01119 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 | 4/07/97 | |

'See reverse of this form

Signed: _____   BY: _____

(Officer authorized by law to make appointments)

| If appointee is in military service, statement to that effect should be made. | GERALD PHILLIPS, CHAIRMAN, BOARD OF POLICE COMMISSIONERS |
|---|---|
| | Name   (please print or type)      Title |

This form must be properly completed, returned to the Department of Personnel Administration and approved before the Auditor will authorize payment of salary. Please file reports early enough to eliminate the necessity of withholding pay.

AUTHORIZATION OF EMPLOYMENT  FORM 14    DEPARTMENT OF PERSONNEL ADMINISTRATION

| City or Town | Springfield | Date | May 5, 1997 |
|---|---|---|---|
| Department | Police | Division | 210 |
| | | Requisition/Certification Number | 96-1295 |

TO THE APPOINTING OFFICER:

Authority is hereby given to fill the vacancy(ies) identified on the above referenced requisition by selecting from among the applicants listed on the attached certification in accordance with the instructions which appear thereon.

### DESCRIPTION OF POSITION TO BE FILLED

Position Title: Police Officer       Number of Vacancies: 60       Salary Rate: 530.

Permanent [X]    Temporary [ ]    Military Substitute [ ]    Full Time [X]    Part Time [ ]
Intermittent [ ]    Reserve [ ]

_____

Personnel Administrator

### NOTIFICATION OF EMPLOYMENT UNDER THE ABOVE AUTHORIZATION

To the Personnel Administrator:

As the legal Appointing Authority I have selected the undersigned individuals for appointment (or promotion) in accordance with the law and the above authorization as follows:*

I, the signed appointee, hereby certify, under the penalties of perjury, that I have not paid and have agreed not to pay, and to the best of my knowledge, no other person has paid nor agreed to pay any money or other thing of value to any person in anticipation or as a result of my appointment. I hereby accept the appointment with the understanding that, under the Civil Service Law and Rules, appointments are governed as follows:

- Permanent appointments are subject to a probationary period of six months (twelve months for police and fire forces).
- Temporary appointments are for the duration of the vacancy.
- Military substitute appointments are temporary subject to the provisions of Chapter 708, Acts of 1941, as amended.

| Date Of Birth | Name, Home Address, S. S. # of Appointee | Employment Date | Appointee's Signature |
|---|---|---|---|
| 5/15/73 | Estrada, Juan, 29 Bowdoin Street Springfield, MA 01109   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 | 4/07/97 | |
| 3/14/70 | Kalish, Edward, 234 Nassau Drive, Springfield, MA 01129  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 | 4/07/97 | |
| 2/27/68 | McCain, Gregory, 653 Beacon Circle, Springfield, MA 01119  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 | 4/07/97 | |
| 7/06/70 | Keenan, Brian, 60 Windemere Street Springfield, MA 01104  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 | 4/07/97 | |
| 11/07/69 | Spradley, Leon, 197 North Hampton Ave. Springfield, MA 01109  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 | 4/07/97 | |
| 1/13/70 | Shink, Norman, 76 Shaker Road Westfield, MA 01085  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 | 4/07/97 | |

'See reverse of this form

Signed: _____

| If appointee is in military service, statement to that effect should be made. | (Officer authorized by law to make appointments) |
|---|---|
| | GERALD PHILLIPS, CHAIRMAN, BOARD OF POLICE COMMISSIONERS |
| | Name   (please print or type)    Title |

This form must be properly completed, returned to the Department of Personnel Administration and approved before the Auditor will authorize payment of salary. Please file reports early enough to eliminate the necessity of withholding pay.

**AUTHORIZATION OF EMPLOYMENT FORM 14**     **DEPARTMENT OF PERSONNEL ADMINISTRATION**

| | |
|---|---|
| City or Town   Springfield | Date   May 5, 1997 |
| Department   Police | Division   210 |
| | Requisition/Certification Number   96-1295 |

**TO THE APPOINTING OFFICER:**
Authority is hereby given to fill the vacancy(ies) identified on the above referenced requisition by selecting from among the applicants listed on the attached certification in accordance with the instructions which appear thereon.

### DESCRIPTION OF POSITION TO BE FILLED

Position Title:  Police Officer        Number of Vacancies:  60        Salary Rate: 530.
Permanent [X]    Temporary [ ]    Military Substitute [ ]    Full Time [X]    Part Time [ ]
Intermittent [ ]    Reserve [ ]

_____

Personnel Administrator

### NOTIFICATION OF EMPLOYMENT UNDER THE ABOVE AUTHORIZATION

To the Personnel Administrator:
    As the legal Appointing Authority I have selected the undersigned individuals for appointment (or promotion) in accordance with the law and the above authorization as follows:*

    I, the signed appointee, hereby certify, under the penalties of perjury, that I have not paid and have agreed not to pay, and to the best of my knowledge, no other person has paid nor agreed to pay any money or other thing of value to any person in anticipation or as a result of my appointment. I hereby accept the appointment with the understanding that, under the Civil Service Law and Rules, appointments are governed as follows:

- Permanent appointments are subject to a probationary period of six months (twelve months for police and fire forces).
- Temporary appointments are for the duration of the vacancy.
- Military substitute appointments are temporary subject to the provisions of Chapter 708, Acts of 1941, as amended.

| Date Of Birth | Name, Home Address, S.S.# of Appointee | Employment Date | Appointee's Signature |
|---|---|---|---|
| 8/16/65 | Brodeur, Joseph, 25 Shadybrook Lane Springfield, MA 01118  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 | 4/07/97 | Joseph E Brodeur |
| 4/21/70 | Denault, Donald, 31 Granby Heights, Granby, MA 01033  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 | 4/07/97 | DRD |
| 9/25/69 | Hrycay, Christopher, 77 Woodlawn Street Springfield, MA 01108  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 | 4/07/97 | Christopher Hrycay |
| 1/15/71 | Bell, Kevin, 138 Garvey Drive, Springfield, MA 01109  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 | 4/07/97 | Kevin Bell |
| 11/20/72 | Kane, David, 910 St. James Avenue Springfield, MA 01104  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 | 4/07/97 | David Kane |
| 3/16/69 | Perez, Angel, 29 Murray Hill Avenue, Springfield, MA 01104  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 | 4/7/97  HUMAN | Angel Perez |

See reverse of this form

Signed: _____  BY: _____

| | |
|---|---|
| If appointee is in military service, statement to that effect should be made. | (Officer authorized by law to make appointments) |
| | GERALD PHILLIPS, CHAIRMAN, BOARD OF POLICE COMMISSIONERS |
| | Name    (please print or type)    Title |

This form must be properly completed, returned to the Department of Personnel Administration and approved before the Auditor will authorize payment of salary. Please file reports early enough to eliminate the necessity of withholding pay.

**AUTHORIZATION OF EMPLOYMENT  FORM 14**     DEPARTMENT OF PERSONNEL ADMINISTRATION

| City or Town | Springfield | Date | May 5, 1997 |
|---|---|---|---|
| Department | Police | Division | 210 |
| | | Requisition/Certification Number | 96-1295 |

**TO THE APPOINTING OFFICER:**
Authority is hereby given to fill the vacancy(ies) identified on the above referenced requisition by selecting from among the applicants listed on the attached certification in accordance with the instructions which appear thereon.

**DESCRIPTION OF POSITION TO BE FILLED**

Position Title:  Police Officer        Number of Vacancies:  60        Salary Rate: 530.

Permanent [X]    Temporary [ ]    Military Substitute [ ]    Full Time [X]    Part Time [ ]
Intermittent [ ]    Reserve [ ]

_____
Personnel Administrator

**NOTIFICATION OF EMPLOYMENT UNDER THE ABOVE AUTHORIZATION**
To the Personnel Administrator:
    As the legal Appointing Authority I have selected the undersigned individuals for appointment (or promotion) in accordance with the law and the above authorization as follows:*

    I, the signed appointee, hereby certify, under the penalties of perjury, that I have not paid and have agreed not to pay, and to the best of my knowledge, no other person has paid nor agreed to pay any money or other thing of value to any person in anticipation or as a result of my appointment.  I hereby accept the appointment with the understanding that, under the Civil Service Law and Rules, appointments are governed as follows:

- Permanent appointments are subject to a probationary period of six months (twelve months for police and fire forces).
- Temporary appointments are for the duration of the vacancy.
- Military substitute appointments are temporary subject to the provisions of Chapter 708, Acts of 1941, as amended.

| Date Of Birth | Name, Home Address, S. S. # of Appointee | Employment Date | Appointee's Signature |
|---|---|---|---|
| 8/09/72 | Mehringer, Mark, 47 Prospect Avenue West Springfield, MA 01089  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 | 4/07/97 | *Mark S. Meh...* |
| 11/27/71 | Rivera, Mike, 64 Goodrich Street Springfield, MA 01104  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 | 4/07/97 | *Mike A. Rivera* |
| 12/24/74 | Sleeper, Jason, 580 Carew Street Springfield, MA 01104 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 | 4/07/97 | *Jason J. Sleeper* |
| 1/02/68 | Santa, Martin, 182 Ambrose Street Springfield, MA 01109 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 | 4/07/97 | *Matin Sata* |
| 4/03/67 | Sullivan, Kevin, 75 Rochford Circle Springfield, MA 01128  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 | 4/07/97 | *Kevin Sullivan* |
| 10/05/70 | Trombley, Michael, 53 Chase Avenue, Springfield, MA 01108  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 | 4/07/97 | *Michael Trombley* |

'See reverse of this form

Signed: _____    BY: _____

(Officer authorized by law to make appointments)

GERALD PHILLIPS, CHAIRMAN, BOARD OF POLICE COMMISSIONERS
Name    (please print or type)    Title

| If appointee is in military service, statement to that effect should be made. |
|---|

This form must be properly completed, returned to the Department of Personnel Administration and approved before the Auditor will authorize payment of salary.  Please file reports early enough to eliminate the necessity of withholding pay.

**AUTHORIZATION OF EMPLOYMENT  FORM 14    DEPARTMENT OF PERSONNEL ADMINISTRATION**

| | | | |
|---|---|---|---|
| City or Town  Springfield | | Date  May 5, 1997 | |
| Department  Police | | Division  210 | |
| | | Requisition/Certification Number  96-1295 | |

TO THE APPOINTING OFFICER:
Authority is hereby given to fill the vacancy(ies) identified on the above referenced requisition by selecting from among the applicants listed on the attached certification in accordance with the instructions which appear thereon.

### DESCRIPTION OF POSITION TO BE FILLED

Position Title:  Police Officer        Number of Vacancies:  60        Salary Rate: 530.
Permanent [X]    Temporary [ ]    Military Substitute [ ]    Full Time [X]    Part Time [ ]
Intermittent [ ]    Reserve [ ]

_____

Personnel Administrator

NOTIFICATION OF EMPLOYMENT UNDER THE ABOVE AUTHORIZATION

To the Personnel Administrator:
    As the legal Appointing Authority I have selected the undersigned individuals for appointment (or promotion) in accordance with the law and the above authorization as follows:*

    I, the signed appointee, hereby certify, under the penalties of perjury, that I have not paid and have agreed not to pay, and to the best of my knowledge, no other person has paid nor agreed to pay any money or other thing of value to any person in anticipation or as a result of my appointment.  I hereby accept the appointment with the understanding that, under the Civil Service Law and Rules, appointments are governed as follows:

- Permanent appointments are subject to a probationary period of six months (twelve months for police and fire forces).
- Temporary appointments are for the duration of the vacancy.
- Military substitute appointments are temporary subject to the provisions of Chapter 708, Acts of 1941, as amended.

| Date Of Birth | Name, Home Address, S. S. # of Appointee | Employment Date | Appointee's Signature |
|---|---|---|---|
| 3/23/67 | Dudley, Vincent, 20 Melwood Avenue E. Longmeadow, MA 01028  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 | 4/07/97 | Vincent Dudley |
| 10/16/67 | 183 lamont st. Spfld Elliot, Brian, MA 01119  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 | 4/7/97 | Brian Elliot |
| | MAY 14 AM 11:54 59s | | |
| | | APPROVED | |
| | | HUMAN RESOURCES DIVISION | |
| | | BY: | |

*See reverse of this form

Signed: _____
(Officer authorized by law to make appointments)

| | |
|---|---|
| If appointee is in military service, statement to that effect should be made. | GERALD PHILLIPS, CHAIRMAN, BOARD OF POLICE COMMISSIONERS |
| | Name    (please print or type)    Title |

This form must be properly completed, returned to the Department of Personnel Administration and approved before the Auditor will authorize payment of salary.  Please file reports early enough to eliminate the necessity of withholding pay.

# Exhibit 6

# KEVIN B. COYLE
*Attorney at Law*

935 Main Street
Springfield, MA 0110\
TEL (413) 787 1524
FAX (413) 787 1703

February 24, 2004

Atty. Peter M. Murphy
Director, Labor Relations
36 Court Street
Springfield, MA 01103

RE:    Badge Number Grievance

Dear Peter:

As we discussed at the Commission meeting last evening, I am enclosing a grievance based on the Commission's vote to not implement the adjusted badge numbers. I understand that the City has agreed to waive the processing of this grievance through the lower steps of the grievance procedure and submit this dispute directly to arbitration, hopefully on an expedited basis. I agree with your suggestion that we select Arbitrator Richard Higgins and request from him his earliest possible hearing date. It may even be possible to submit some or all of the case on a stipulated record, as there does not seem to be many disputes as to the facts of the case.

If you do not agree with the procedure which I have recited above please contact me promptly so we can resolve any misunderstanding. Otherwise, please advise me if you will contact Mr. Higgins, or you would like me to do so.

Very truly yours,

Kevin B. Coyle

KBC/c
Encl.

cc:    Thomas Scanlon, President Local 364 IBPO

RECEIVED
5
BY: _____

 

**(413)787-7013**
**(413)750-2176 FAX**

THE CITY OF
SPRINGFIELD, MASSACHUSETTS

## LABOR RELATION'S DEPARTMENT
City Hall, 36 Court Street, Room 28
Springfield, MA 01103

February 26, 2004

Attorney Kevin Coyle
935 Main Street
Springfield, MA 01103

**RE:    Badge Number Grievance**

Dear Kevin:

Please accept this correspondence as a response to your letter dated February 25, 2004 regarding the above referenced issue. It is the position of the City that processing the Grievance pursuant to the contractual language is not necessary since the Police Commission has already heard and voted on this matter. Additionally the City is amenable to expedited arbitration, specifically with Arbitrator Richard Higgins. Perhaps we could contact Mr. Higgins on a conference call.

Please be advised, however, that by expediting the processing of the grievance and arbitration, the City in no way waives any defenses, arguments, or claims it may have now or in the future.

Thank you for your cooperation in this matter and please call me at your convenience to contact Mr. Higgins.

Sincerely Yours,

Peter M. Murphy

# Exhibit 7



CX 10

Local 364 IBPO
Effect of Correctly Implementing §7.02 on Whites/Minorities

**October 15, 1996 Appointees**

|  | Whites | Blacks | Hispanics |
|---|---|---|---|
| higher badge | 18 | 1 | 1 |
| no change | 1 | 0 | 1 |
| lower badge | 2 | 4 | 11 |
| total number | 21 | 5 | 13 |

**April 6, 1997 Appointees**

|  | Whites | Blacks | Hispanics |
|---|---|---|---|
| higher badge | 17 | 0 | 0 |
| no change | 5 | 0 | 0 |
| lower badge | 0 | 3 | 7 |
| total number | 22 | 3 | 7 |



**July 13, 1998 Appointees**

|  | Whites | Blacks | Hispanics |
|---|---|---|---|
| higher badge | 1 | 5 | 7 |
| no change | 5 | 6 | 8 |
| lower badge | 18 | 1 | 0 |
| total number | 24 | 12 | 15 |

# Exhibit 1

 COYLE

*Attorney at Law*



9?? Main Street
Springfield, MA 01103
TEL (413) 787 1524
FAX (413) 787 1703

September 4, 2003

Board of Police Commissioners
Springfield Police Department
130 Pearl Street
Springfield, MA 01105

RE:    Seniority Issue/Request for Documents

Dear Board Members:

On August 10, 2003 I sent a letter to you requesting copies of all certifications from which police officers have been appointed since July 1, 1995, so that Local 364 can assess a seniority issue which has arisen among our members. To date I have received no response to that request.

Please advise me of the status of that request.

Very truly yours,

Kevin B. Coyle

KBC/c

cc:    Thomas Scanlon, President.Local 364 IBPO
       Atty. Peter M. Murphy